UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 11 R SALES, INC., a Washington corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT YARTO, STEVE WINKLER, and YARTO INTERNATIONAL GROUP, L.P.,<br><br>　　　　　Defendants.<br>_____<br>JEFF LUBLIN, in his separate capacity, JAVIER MUNGUIA, in his separate capacity, WASHINGTON EXPORT, LLC, and U.S. EXPORT, LLC,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>YARTO INTERNATIONAL GROUP, L.P., a Texas Limited Partnership, YARTO INTERNATIONAL TRADING COMPANY, L.P., a Texas Limited Partnership, ROBERT YARTO, in his separate capacity, and STEVE WINKLER, in his separate capacity,<br><br>　　　　　Defendants.<br>_____<br>YARTO INTERNATIONAL GROUP, L.P., YARTO INTERNATIONAL TRADING COMPANY, L.P., ROBERT YARTO and STEVE WINKLER,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>WASHINGTON EXPORT, LLC, et al.,<br><br>　　　　　Defendants. | No. CV-07-3006-FVS<br><br>**TENTATIVE CONCLUSIONS RE A SUMMARY JUDGMENT MOTION FILED BY YARTO INTERNATIONAL TRADING COMPANY, L.P., CONCERNING THE PERISHABLE AGRICULTURAL COMMODITIES ACT** |

TENTATIVE CONCLUSIONS - 1

**THIS MATTER** comes before the Court based upon a motion for summary judgment that has been filed by Yarto International Trading Company, L.P., among others. Oral argument is scheduled to take place on September 3, 2006. The following are the Court's tentative conclusions with respect to this motion. The Court is advising counsel of its tentative conclusions in advance of oral argument in order to help them address the Court's concerns.

**BACKGROUND**

Prior to October 12, 2006, Yarto International Group, L.P. ("YIG") and/or Yarto International Trading Company ("YITC") owned Washington Export, LLC ("WashEx"). WashEx purchased fruit from Borton & Sons, Inc. ("Borton"), Evans Fruit Company ("Evans"), and 11 R Sales, Inc. ("11 R"), among others. (11 R is Evans' sales arm.) WashEx did not pay for all of its purchases from 11 R and Borton. On October 12, 2006, YITC agreed to relinquish control of WashEx. In addition, Robert Yarto and Steven Winkler agreed to pay 11 R and Borton for some of the purchases that WashEx made prior to October 12th.[1] After October 12th, WashEx continued to purchase fruit from both 11 R and Borton and, at least for a while, sell it to YITC. Borton, 11 R, and WashEx allege that Messrs. Yarto and Winkler have not paid their share of the purchases which WashEx made before October 12th. They further allege that YITC has not paid for some of the

---

[1] Additional information concerning WashEx, YIG, YITC, Mr. Yarto and Mr. Winkler is set forth in a document that is entitled "Tentative Conclusions."

TENTATIVE CONCLUSIONS - 2

purchases which it made after October 12th.  Borton, 11 R, and WashEx seek relief under the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. §§ 499a-499s.

**PACA**

Borton, 11 R, and WashEx allege that they are sellers of perishable agricultural commodities.  PACA does not define the term "seller."  *See* 7 U.S.C. § 499a(b) (defining certain terms).  "[C]ongressional silence often reflects an expectation that courts will look to the common law to fill gaps in statutory text, particularly when an undefined term has a settled meaning at common law."  *Clackamas Gastroenterology Assocs. v. Wells*, 538 U.S. 440, 447, 123 S.Ct. 1673, 1679, 155 L.Ed.2d 615 (2003).  An influential dictionary defines the term "seller" as "[a] person who sells or contracts to sell goods[.]"  Black's Law Dictionary (Bryan A. Garner ed., 8th ed.2004) (accessed online).  Given that definition, it appears that Borton, 11 R, and WashEx qualify as "sellers" for purposes of PACA.

Borton, 11 R, and WashEx also allege that YITC is a dealer in perishable agricultural commodities.  Unlike the term "seller," the term "dealer" is defined by PACA.  A "dealer" is a "person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce[.]"  7 U.S.C. §  499a(b)(6).  YITC does not deny that it is a dealer in perishable agricultural commodities.

The fact that YITC qualifies as a dealer, and that Borton, 11 R, and WashEx qualify as sellers, means that WashEx's, 11 R's, and

Borton's sales to YITC may be entitled to PACA trust protection:

> PACA establishes a nonsegregated trust in which a produce dealer holds produce-related assets as a fiduciary until full payment is made to the produce seller. . . . "The trust automatically arises in favor of a produce seller upon delivery of produce and is for the benefit of all unpaid suppliers or sellers involved in the transaction until full payment of the sums owing has been received."

*Bowlin & Son, Inc. v. San Joaquin Food Serv., Inc. (In re San Joaquin Food Serv., Inc.)*, 958 F.2d 938, 939 (9th Cir.1992) (citing and quoting *C & E Enters., Inc. v. Milton Poulos, Inc. (In re Milton Poulos, Inc.)*, 947 F.2d 1351, 1352 (9th Cir.1991) (per curiam)).

PACA trust protection is subject to an important limitation. "The protection of the trust is forfeited by an agreement between the parties for payment that exceeds thirty days." *Baiardi Food Chain v. United States*, 482 F.3d 238, 242 (2d Cir.), *cert. denied*, --- U.S. ---, 128 S.Ct. 307, 169 L.Ed.2d (2007). Several circuits have held that waiver occurs whether the agreement to extend payment occurs before or after the transaction. *See, e.g., Bocchi Americas Ass'n, Inc. v. Commerce Fresh Mktg., Inc.*, 515 F.3d 383, 390 (5th Cir.2008). The Ninth Circuit has yet to address this issue. Nevertheless, there is no reason to think this circuit will reject its sister circuits' lead.

**OLD BUSINESS**

There is a sharp dispute with respect to whether Messrs. Yarto and Winkler had to begin making payments to 11 R and Borton during the Fall of 2006 for purchases that WashEx made prior to October 12th. However, even if Messrs. Yarto and Winkler had such an obligation, Borton and 11 R gave them more than 30 days from October 12th to complete payment. Consequently, it appears that 11 R and Borton have

TENTATIVE CONCLUSIONS - 4

waived PACA trust protection with respect to the purchases that WashEx made before October 12, 2006.

**NEW BUSINESS**

On or about April 10, 2007, Borton and 11 R entered into the Conditional Forbearance agreement with WashEx. YITC was not a party to the contract. The Conditional Forbearance gave WashEx more than 30 days to pay for some of its post-October 12th fruit purchases from 11 R and Borton. Consequently, as to those purchases, Borton and 11 R arguably forfeited PACA trust protection. In other words, WashEx obtained control of the fruit free from a PACA trust. Thereafter, WashEx sold the fruit to YITC. Since YITC is a produce dealer, one would tend to assume that YITC obtained control of the fruit subject to a PACA trust; provided, of course, that WashEx complied with the statutory requirements necessary to establish one. "Not so," says YITC. According to YITC, a single trust comes into existence when a producer sells perishable agricultural commodities to a dealer. To YITC's way of thinking, if a producer forfeits trust protection after placing perishable agricultural commodities in the stream of commerce, the trust dissolves. YITC argues that, once a PACA trust dissolves, no "downstream" seller can recreate it.

The Secretary of Agriculture has promulgated a regulation that states:

> The trust is made up of perishable agricultural commodities received in all transactions, all inventories of food or other products derived from such perishable agricultural commodities, and all receivables or proceeds from the sale of such commodities and food or products derived therefrom. Trust assets are to be preserved as a nonsegregated "floating" trust. Commingling of trust assets is

TENTATIVE CONCLUSIONS - 5

contemplated.

7 C.F.R. 46.46(b). Relying, in part, upon this regulation, the Second Circuit has held "that a single PACA trust exists for the benefit of all of the sellers to a Produce Debtor, and continues in existence until all of the outstanding beneficiaries have been paid in full." *Tom Lange Co. v. Kornblum & Co. (In re Kornblum & Co.)*, 81 F.3d 280, 286 (2d Cir.1996).

The preceding rule would provide important guidance were this a situation in which multiple producers sold fruit to a single purchaser, the purchaser went bankrupt, and the sellers were competing against each other for whatever remained of the purchaser's assets. But this is not such a situation. Here, the issue is whether a downstream purchaser/seller (*i.e.*, WashEx) is bound by the upstream sellers' (*i.e.*, 11 R's and Borton's) forfeiture of PACA trust protection. YITC has not cited a single case in which a court has resolved this issue against a downstream seller.

YITC has advanced an ingenious interpretation of PACA. YITC's interpretation raises a complex issue of statutory construction. *Cf. Axess International, Ltd. v. Intercargo Ins. Co.*, 183 F.3d 935, 941 (9th Cir.1999) ("In construing a statute in a case of first impression, we look to the traditional signposts of statutory construction: first, the language of the statute itself; second, its legislative history, and as an aid in interpreting Congress' intent, the interpretation given to it by its administering agency." (quoting *Funbus Sys., Inc. v. State of California Pub. Utils. Comm'n*, 801 F.2d 1120, 1125 (9th Cir.1986))). In order to obtain summary judgment,

YITC must show that its interpretation of PACA is a correct reading of congressional intent.  To date, YITC has failed to do so.

**TENTATIVE CONCLUSIONS**

1. Borton and 11 R forfeited PACA trust protection with respect to their pre-October 12th fruit sales to WashEx by extending the deadline for payment more than 30 days from October 12th.

2. YITC has failed to establish that its interpretation of PACA is one which Congress intended.

**CONCLUSIONS ARE TENTATIVE**

The preceding conclusions are tentative.  After listening to oral argument, the Court may modify or abandon them.  Since this is not an order, the Court will not accept a motion for reconsideration.  Nor will the Court accept supplemental evidence or memoranda.  The record is complete for purposes of dispositive motions.

**THE DISTRICT COURT EXECUTIVE** is hereby directed to enter the Court's tentative conclusions and furnish copies to counsel.

**DATED** this   29th    day of August, 2008.

                    s/ Fred Van Sickle
                      Fred Van Sickle
                United States District Judge

TENTATIVE CONCLUSIONS - 7